IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-02024-LTB

BARBARA SANCHEZ,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

ORDER

_____

      Plaintiff, Barbara Sanchez, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying her application for disability insurance benefits, filed

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Jurisdiction is proper

under 42 U.S.C. § 405(g).  Oral arguments will not materially aid in the resolution of this appeal.

 After consideration of the parties' briefs, as well as the administrative record, I REVERSE the

SSA Commissioner's final order and REMAND for further proceedings.

## I.  STATEMENT OF THE CASE

      Plaintiff seeks judicial review of the Commissioner's decision denying her August 14,

2008 application for disability insurance benefits. [Administrative Record ("AR") 97]  The

application was initially denied at the administrative level. [AR 50]  An Administrative Law

Judge ("ALJ") subsequently conducted a hearing and issued a written ruling on February 11,

2010, denying Plaintiff's application on the basis that she was not disabled prior to December

31, 2004, the date her disability insurance status expired. [AR 10-23]   On July 30, 2010, the

SSA Appeals Council denied Plaintiff's administrative request for reconsideration, making the

denial final for the purpose of judicial review. [AR 1]  Plaintiff timely filed her complaint with this court seeking review of the SSA Commissioner's final decision.

## II.  FACTS

Plaintiff was born on December 14, 1960, and was 40 years old on her alleged onset date and 48 years of age at the time of the ALJ's decision. [AR 28, 97, 105]  She has a fourth or fifth-grade education, obtained in Mexico. [AR 28, 136]  Her prior work history consists of housekeeping and cleaning. [AR 132]  Plaintiff alleges that she became disabled on January 1, 2001, due to poor memory, depression (with electric shock therapy), thyroid and high blood pressure.  [AR 124, 131]  In order to be eligible for benefits, Plaintiff must prove that her disability began before December 31, 2004, the date she was last insured, pursuant to 20 C.F.R. §404.130.  Therefore the relevant time period for determining disability is January 1, 2001 through December 31, 2004.

Plaintiff's medical records commence with a visit to the emergency room at Porter Adventist Hospital on February 14, 2001, where she was treated for gastritis and depression, and was noted to be agitated and not sleeping well.  Upon release she was sad but not suicidal. [AR 731-34]

At this time Plaintiff began seeing a psychiatrist, Randolph Pock, MD, for "very significant depression" starting in the Summer of 2000. [AR 453]  In his first assessment dated February 21, 2001, Dr. Pock noted symptoms of lowered mood, feelings of desperation, decreased energy, increased crying, withdrawal (and wishes to say in bed all day long), a twelve pound weight loss, total loss of libido, and impaired sleep. [AR 451]  He diagnosed Plaintiff with "unquestionable symptoms of depression of unclear etiology." [AR 452]  Plaintiff's

depression improved within a few months on medication.  By May 2001, Dr. Pock noted that she was cheerful and had "dramatic improvement." [AR 455]

On the evening of October 26, 2002, Plaintiff presented at the emergency room at Exempla St. Joseph Hospital for uncontrolled anxiety, panic attacks, and an acute grief reaction when her 20-year old son was killed in a motor vehicle accident. [AR 763-764]  As Dr. Pock noted in a later report: "From that time onward, she struggled with a sense of hopelessness and irreplaceable loss which therapy and medication was [sic] not able to relieve." [AR 465]  Upon seeing her again approximately one year after her son's death, Dr. Pock indicated that she was extremely sad and tearful although a little better. [AR 458]  Six months later he noted that she was still very sad and appeared depressed and tired. [AR 459]  This visit, in July 2004, was the last visit within the relevant time period for establishing disability.

Plaintiff's date last insured was December 31, 2004.  Thereafter, the records show that she visited the Denver Health Medical Center emergency room with depression in September 2005. [AR 477-85]  She was subsequently hospitalized in the Denver Health Medical Center psychiatric unit on six occasions between September 2007 and June 2008. [AR 488-93, 204-350]  During these times she was treated at the Mental Health Center of Denver by psychiatrist Kristin Riley-Lazo.

## III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e)&(f).     Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

As relevant here, a claimant is required to establish that she became disabled prior to the expiration of her insured status. 20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since her onset date of January 1, 2001 (Step One). [AR18]  The ALJ also found that through the date last insured Plaintiff had the severe medical impairments of depression and anxiety (Step Two). [AR 18]  Because the ALJ determinated that she did not have a impairment or combination of impairments that meets or equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 18]

The ALJ then evaluated the evidence and found that during the relevant time period Plaintiff retained the RFC to do work at all extertional levels, but that she was limited in her ability to understand, remember and carry out unskilled work at SVP level 1-2, and occasional interaction with supervisors, co-worker, and the general public. [AR 19]  As a result of Plaintiff's RFC assessment, the ALJ found that she was capable of performing her past relevant work as an industrial cleaner (Step Four). [AR 22]   Thus, the ALJ denied Plaintiff's application because she was not under a disability as defined by the SSA – from her alleged disability onset date through the date last insured – at Step Four of the sequential evaluation process. [AR 22] On review, the Appeals Council "found no reason" to reconsider the ALJ's decision. [AR 1]

## V.  STANDARD OF REVIEW

My review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  My review of the factual findings is to determine whether they "are based upon substantial evidence and

inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this]

reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th

Cir. 1970).

## VI. APPEAL

I first address Plaintiff's argument on appeal that the ALJ erred in giving "great weight"

to the report of a state agency psychiatrist – who did not have evidence from the relevant time

period on which to base his opinion – and gave "little weight" to the opinion of her treating

psychiatrist.

In assessing the medical evidence, the ALJ found as follows:

> The only medical records during the relevant period are very intermittent treating
> psychiatric records from Randolph Pock, MD. Per Dr. Pock, he first evaluated
> claimant for depression on February 13, 2001, and prescribed a trial of anti-
> depressant medication, which was adjusted shortly thereafter due to claimant's
> continued complaints of depression. Dr. Pock's records show claimant was doing
> better by March 20, 2001, doing "much better" by April 4, 2001, and was
> "dramatically" better" by April 24, 2001. As of March 12, 2002, records noted
> claimant continued to feel good, and was stable with no depression. No further
> treatment is shown until March 6, 2003, when Dr. Pock noted claimant was
> "slowly grieving" her son's October 26, 2002 death. No treatment is shown again
> until October 23, 2003, when the record reflected claimant was getting better
> despite continued sadness over her son's death. When claimant was next seen by
> Dr. Pock six months later, on July 15, 2004, she was noted as still sad although
> slowly coming to terms with her son's death. Claimant was not seen by Dr. Pock
> for another 6 months, on January 11, 2005, when the record noted claimant was
> doing better and had stopped taking her Zoloft. By the next visit on April 20,
> 2005, claimant was depressed again, but Dr. Pock noted claimant had chosen to
> be off her medications "for months." Claimant was restarted on Zoloft.
>
> . . .
>
> After April 20, 2005, no further contact with Dr. Pock is shown for 8 months, i.e.,
> on December 20, 2005, which is almost 1 full year after the claimant's date last
> insured. Other than this December 2005 session with Dr. Pock, the only other
> record of treatment in the year following claimant's date last insured is a
> September 28, 2005, Denver Health Medical Center (DHMC) record that reflects

claimant's significant depression for one month, a diagnosis of major depression disorder severe, and a GAF rated at 25.  Hospitalization for a trial of anti-depression medication was ordered, and claimant was transferred for psychiatric treatment.

. . .

In a medical report dated September 24, 2008, Dr. Pock opined that claimant's condition had worsened over time.  However, in a March 29, 2009 opinion of claimant's mental limitations and mental ability for work related activities prior to December 31, 2004, Dr. Pock assessed claimant with largely marked limitations, and stated claimant had incapacitating depression since he first saw her in 2001. [AR 20-21]

The ALJ concluded that "Dr. Pock's treatment notes during the relevant period simply do not support his subsequent March 2009 opinion of claimant's mental limitation and abilities." Thus, the ALJ determined that:

[a]s it applies to the relevant period, Dr. Pock's opinion is given little weight.  It is inconsistent with and unsupported by his very intermittent treating records, which as discussed above,  reflect claimant's improvement on medications beginning March 2001, and continuing through March 2002.  The doctor's records do not indicate any recurrence of claimant's depression until her son's untimely death in October 2002, with records subsequent to this event showing claimant was getting better despite continued sadness over his death. Additionally, Dr. Pock's opinion is inconsistent with the October 18, 2007, progress note from MHCD psychiatrist Kristin Riley-Lazo, MD, which reflects her contact with Dr. Pock.  Per Dr. Riley-Lazo, Dr. Pock reported he had seen claimant off and on since December 13, 2001, until she lost her health insurance earlier in 2007.  By Dr. Pock's report, claimant had improved after she started in treatment with him, and that during the 6 years of treatment he never witnessed manic or psychotic symptoms in the claimant. [AR 21]

The ALJ noted that the treating records clearly support significant worsening starting in at least 2007 – with electro-shock therapy treatment, and recurrent hospitalizations for psychotic and catatonic feature – and supports a determination of current disability.  However, the ALJ concluded that "the medical evidence of record through the date last insured and for several

month afterwards, does not support the claimant as disabled for any period of 12 months or more during the relevant period." [AR 21]  In so doing, the ALJ gave  "great weight" to the opinion of the state agency (DDS) reviewing psychiatric consultant, Dr. Donald Glasco, "who determined there was no sufficient evidence in the medical record to support a disabling mental impairment prior to claimant's date last insured [as] consistent with the medical evidence of record for the relevant period through the claimant's date last insured." [AR 22]

On appeal, Plaintiff asserts that the ALJ erred in giving great weight to Dr. Glasco's opinion – as the reviewing state agency psychiatrist – because Dr. Glasco did not have the complete case record before him when issuing his opinion.  Specifically, she contends that the record indicates that Dr. Glasco did not have the benefit of Dr. Pock's treatment records and, as such, the only records available to him were for the time period commencing almost three years after the end of Plaintiff's date last insured.  Plaintiff argues that Dr. Glasco's opinion "was the only medical opinion on which the ALJ based her decision, and it was not entitled to any weight [because Dr. Glasco did not consider the relevant treatment records, therefore] the ALJ's decision is not supported by substantial evidence and at least a remand is required."  In response, the Commissioner maintains that Dr. Pock's treatment notes from the relevant time period were available to the state agency at the time of Dr. Glasco's review of the medical record.

Both parties refer me to the "Case Development Sheet" which was prepared by the state agency and tracks the initial development of the case. [AR 121]  That sheet indicates that on August 25, 2008, Dr. Pock's records were requested and then a notation is made that "LEFT MSG FOR DR. POCK RE  MER REQUEST" on September 10, 2008. [AR 121]  That entry also indicates an "R" under the column titled "Rcv" with a date of "9/15/08" under the column

entitled "Comp Date." [AR 121]  In a later entry dated September 15, 2008, the following

notation, with Dr. Pock as the designated contact, is made:  "2nd msg left re MER status.

09/22/2008 9:10," and the "Rcv" column has an "R", and the "Comp Date" column indicates

"09/29/08." [AR 123]

      An entry dated September 29, 2008 indicates "RFRL MC Complete" with Donald Glasco

as the contact. [AR 123]  This comports with Dr. Glasco's opinion – contained within a

"Psychiatric Review Technique" form – which is also dated September 29, 2008. [AR 173-85]

That report does not specify what records were considered, but indicates under the "Consultant's

Notes" section that "MER REPORTS CLMT STARTED SEEING PSYCHIATRIST 12/01 FOR

DEPRESSIVE EPISODE THAT STARTED THE PREVIOUS SUMMER." [AR 185]  This is

the only information in the report that relates to the relevant time period while Plaintiff was

being treated by Dr. Pock.  I note that this information is inaccurate (in that Plaintiff actually

began seeing Dr. Pock in February of 2001), and that it was available in the later medical records

when Dr. Riley-Lazo contacted Dr. Pock on October 17, 2007, and indicated in her progress

notes that Plaintiff  "started seeing him on 12/13/01 for depression that had started the previous

summer." [AR 700]

      Plaintiff also refers me to a cover letter in the file which indicates that the records from

Dr. Pock were forwarded to the state agency by her previous attorney on March 24, 2009. [AR

449]  In addition, she notes that Dr. Pock's records are not listed as "information used" in the

Commissioner's initial denial letter dated September 30, 2008. [AR 50]

      Thus, the record is not clear as to whether Dr. Pock's records were available to Dr.

Glasco at the time he opined that the medical evidence was insufficient to support a disabling

mental impairment prior to claimant's date last insured.   While Plaintiff has the burden of proving disability, *see Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997), because a social security disability hearing is a non-adversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs*., 13 F.3d 359, 360–61 (10th Cir.1993); *see also* 20 C.F.R. § 404.1512(a)-(c).  The ALJ's duty is "one of inquiry and factual development." 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d).  If  Dr. Glasco opinion of insufficient evidence is, in fact, based on a review of the records that didn't include the treatment notes from Dr. Pock, the ALJ's reliance on his opinion would constitute error.  As a result, I agree with Plaintiff that the matter should be remanded for additional consideration. *See Medina v. Apfel*,1999 WL 178694 (10th Cir. 1999)(unpublished)(ruling that because the ALJ did not have sufficient facts before him to make an informed decision, it was not supported by substantial evidence, and must be remanded under 42 U.S.C. § 405(g) for the ALJ to further develop the record).


Accordingly, I REVERSE the SSA Commissioner's final order and REMAND the matter to the Commissioner for further proceedings consistent with this order and judgment.

Dated: September   29  , 2011, in Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE